1   Michael L. Charlson (SBN 122125)
        mcharlson@velaw.com
2   Jessica Mussallem (SBN 237806)
        jmussallem@velaw.com
3   Demi Williams (SBN 294423)
        dwilliams@velaw.com
4   Elliott J. Joh (SBN 264927)
        ejoh@velaw.com
5   **VINSON & ELKINS LLP**
    525 Market Street, Suite 2750
6   San Francisco, CA 94105
    Telephone: 415.979.6910
7   Facsimile: 415.704.3264

8   Attorneys for Defendant
    LINEBARGER GOGGAN BLAIR & SAMPSON LLP,
9   a Texas limited liability partnership

10                  **UNITED STATES DISTRICT COURT**

11              **NORTHERN DISTRICT OF CALIFORNIA**

12                      **SAN FRANCISCO**

13

14  4EC HOLDINGS, LLC, a Delaware limited liability
    company,                                              Case No.

15                          Plaintiff,                    **NOTICE OF REMOVAL**

16          vs.

17  LINEBARGER GOGGAN BLAIR & SAMPSON
    LLP, a Texas limited liability partnership,

18

19                          Defendant.

20

21

22          Pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant Linebarger Goggan

23  Blair & Sampson, LLP ("Linebarger") hereby removes to this United States District Court for the

24  Northern District of California, San Francisco Division, that certain civil action styled *4EC*

25  *Holdings, LLC v. Linebarger Goggan Blair & Sampson LLP*, Case No: CGC-13-531744 pending in

26  the Superior Court of California, in and for the City and County of San Francisco. As grounds for

27  removal of this action, Defendant respectfully shows the Court as follows:

28  ///

**I.**

**STATEMENT OF THE CASE**

This is a putative class action brought by 4EC Holdings, LLC ("4EC") alleging violations of the California Business and Professions Code against Linebarger.  Linebarger is a law firm based in Texas that contracts with state and local governmental agencies to collect debts owed to those agencies.  The debts can include unpaid taxes, tolls, fines and fees for services for use of public facilities such as public hospitals.

4EC initially filed this action on May 28, 2013 on behalf of itself and "[a]ll persons or entities who are California residents who have paid Linebarger Law Firm money in response to Linebarger Law Firm's demands on behalf of California governmental entities within the last three years."  Orig. Compl. (Ex. C-1) ¶ 8.  The Original Complaint alleged that Linebarger violated California law through its collections work for various California governmental entities and requested "restitution of any money or other consideration Linebarger Law Firm has received directly or indirectly from 4EC and the Class as a result of Linebarger Law Firm's being engaged in the illegal practice of intrastate law." *Id.* ¶ C.  The Original Complaint also requested an injunction and attorney's fees.  *Id.* ¶¶ B, D.  The Original Complaint did not allege or estimate the size of the putative class or the amount in controversy.

On July 10, 2013, 4EC filed its First Amended Complaint ("FAC").  The FAC redefined the putative class to include "California Citizens who have paid [Linebarger] money in response to [Linebarger]'s demands on behalf of California Governments within four years last past from the date of the initial filing of this case."  FAC (Ex. C-2) ¶ 19.  The FAC requested "restitution of any money (including, but not limited to, collection fees) [Linebarger] has collected, directly or indirectly, from California Citizens over the last four years," along with an injunction and attorney's fees.  *Id.* ¶¶ B–D.  Like the Original Complaint, the FAC did not allege or estimate the size of the putative class or the amount in controversy.

On April 24, 2014, 4EC filed its Second Amended Complaint ("SAC").  In the SAC, 4EC dramatically expanded the class period by more than seven years.  4EC now alleges a class of "all California Citizens who paid [Linebarger] money in response to the Texas Lawyer Scare Letters

-2-

during the Overall Relevant Period," SAC (Ex. A) ¶ 27, which 4EC defines as the period from February 6, 2002 until final judgment is rendered in the case, *id.* ¶ 8. This new class is alleged by 4EC to include "tens of thousands of members." *Id.* ¶ 30. Additionally, 4EC now requests, in addition to an injunction and attorney's fees, "restitution of all monies which [Linebarger] has obtained from the Class" since February 2002. *Id.* ¶¶ B–D. As was the case in the prior versions of the complaint, the actual amount in controversy is still unspecified except that the SAC now estimates the amount to be "millions of dollars." *Id.* ¶ 40. Based on the allegations and relief requested in the SAC, Linebarger has determined from its own records the amount in controversy to be in excess of $5,000,000. *See infra* Part II.A.4.

4EC also filed a Motion to Certify the Class on April 9, 2014, relying on the class allegations in the SAC. Pl.'s Mem. Supp. Mot. Certify Class (Ex. C-3). The Class 4EC seeks to certify is based on the time periods described and defined in the SAC. *Id.* at 1–2, 5–6, 8, 10–12.

Because this is a putative multistate class action subject to the Class Action Fairness Act of 2005 ("CAFA"), it is removable under 28 U.S.C. §§ 1332(d)(2) & 1453(b). Linebarger has satisfied all of the procedural requirements of 28 U.S.C. § 1446 and hereby removes this action to the United States District Court for the Northern District of California under 28 U.S.C. §§ 1441 & 1453.

## II.

## BASIS FOR REMOVAL

**A.    This Court Possesses Original Jurisdiction Under 28 U.S.C. § 1332(d).**

This Court has jurisdiction under CAFA because all of the requirements under 28 U.S.C. § 1332(d) are satisfied.

**1.    This Is a Class Action.**

This is a class action within the meaning of 28 U.S.C. § 1332(d)(1)(B), which defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 4EC filed this case as a class action in the Superior Court of California in and for the City and County of San Francisco on behalf of itself and all others similarly situated. *See* Orig. Compl. (Ex. C-1) ¶ 7; FAC (Ex. C-2) ¶ 18; SAC (Ex. A) ¶¶ 26, A, C;

-3-

*see also* Pl.'s Mem. Supp. Mot. Certify Class (Ex. C-3).  Therefore, this is a putative class action subject to CAFA.

### 2.      The Proposed Class Exceeds 100 Members.

As required by 28 U.S.C. § 1332(d)(5)(B), the proposed class contains more than 100 members.  4EC alleges that "there are tens of thousands of members of the Class," SAC (Ex. A) ¶ 30, which consists of "all California Citizens who paid the Texas Law Firm money in response to the Texas Lawyer Scare Letters" since February 6, 2002, *id.* ¶ 27.  Thus, the jurisdictional class-size requirement of 28 U.S.C. § 1332(d)(5)(B) is met on the face of the SAC.  Linebarger has also determined, based on an examination of its own records in light of the allegations in the SAC, that the putative class—now defined as going back to 2002—as alleged contains more than 70,000 members.  Gruver Decl. (Ex. B) ¶ 5.

### 3.      The Required Diversity of Citizenship Exists.

This action satisfies CAFA's minimum diversity requirement, which provides for federal jurisdiction over an action in which any member of the plaintiff class is a citizen of a different state than at least one defendant.  28 U.S.C. § 1332(d)(2)(A).

Since the commencement of this action and continuously through the date of this Notice, Linebarger was and is a citizen of Texas.  For the purposes of CAFA jurisdiction, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  *Id.* § 1332(d)(10).  Linebarger, as a limited liability partnership, is just such an "unincorporated association," and as 4EC alleges, it has its principal place of business in Austin, Texas, was organized under the laws of the State of Texas, and has no partners in California.  *See* SAC (Ex. A) ¶ 2; *see also* Gruver Decl. (Ex. B) ¶ 2.  Thus, Linebarger is a Texas citizen for the purposes of diversity jurisdiction under CAFA.

Since the commencement of this action and continuously through the date of this Notice, 4EC was and is a citizen of Delaware and California.  Under the same rule discussed above, 4EC, an LLC, is organized in Delaware and has its principal place of business in California.  *See* SAC (Ex. A) ¶ 1.  Meanwhile, the entirety of 4EC's proposed class consists only of "California Citizens" according to the complaint.  *See id.* ¶ 27.  Thus, 4EC is a citizen of California and Delaware and

-4-

1   every member of 4EC's class is a California citizen for the purposes of diversity jurisdiction under

2   CAFA—and the only defendant is a Texas citizen.   Therefore, minimum diversity of citizenship

3   under CAFA is satisfied.

4           **4.        The Minimum Amount in Controversy Is Satisfied.**

5           This putative class action satisfies the amount-in-controversy requirement in 28 U.S.C.

6   § 1332(d)(2) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of

7   interests and costs.   Of course, Lineberger denies that 4EC is entitled to any relief whatsoever, either

8   for itself or for members of the putative plaintiff class.   However, given 4EC's claims and requested

9   relief, seeking "restitution of all monies which [Lineberger] has obtained from the Class during the

10   Overall Relevant Period," plus attorneys' fees and injunctive relief, the total amount in controversy

11   in the case exceeds the sum of $5,000,000.   This is true for two reasons, both apparent after an

12   investigation of Lineberger's records.

13           First, 4EC is now requesting "restitution of all monies which [Lineberger] has obtained from

14   the Class" since February 2002.   SAC (Ex. A) ¶ C.   4EC also alleges that this case involves

15   "millions of dollars," in light of the expanded complaint and extended class period.   *Id.* ¶ 40.

16   Lineberger disputes the damages claims in this case, and Lineberger denies the material allegations

17   of 4EC's claims.   Nonetheless, after examining its internal records in connection with the SAC,

18   Lineberger has determined that the amount of restitution demanded in the SAC totals more than

19   $10,000,000.   *See* Gruver Decl. (Ex. B) ¶ 5.   Taking 4EC's restitution demand, Lineberger's partner

20   and Chief Compliance Officer, Lori Gruver, utilized the firm's CUBS database to extract data

21   reflecting the total number of debtors who made payments, the total amount collected, and the total

22   Lineberger fees for its California government clients for February 2002 until September 2013.   *Id.*

23   ¶ 6.   This was a significant undertaking that took days to complete and many hours of processing

24   time to compile.   *Id.*   Ms. Gruver examined the data extraction and added the totals for each

25   California government client for each year during the period and then totaled the whole period.   *Id.*

26   The sum total of the amounts obtained from debtors was in excess of $10 million.   *Id.*   Excluding the

27   beginning and ending months of the calculation (in which Plaintiff alleged a specific beginning and

28   ending date) and looking at the period from March 2002 to August 2013, the amount in controversy

-5-

is still well in excess of $10 million.  *Id.*  Moreover, 4EC also seeks recovery of amounts collected since September 2013 until the date of judgment, plus injunctive relief and attorney's fees, all claims that increase the amount in controversy further.

Second, 4EC's individual claim based on the amount collected from it by Linebarger is ninety dollars ($90).  SAC (Ex. A) ¶ 24.  4EC further asserts that its claims "are typical of the claims of the members of the Class."  *Id.* ¶ 32.  An examination of Linebarger's records reveals that the size of the putative class as defined by 4EC includes more than 70,000 persons.  Gruver Dec. (Ex. B) ¶ 5. Assuming without conceding that 4EC's ninety dollar ($90) claim is typical of the claims of all class members, as 4EC alleges, this would result in an amount in controversy of more than $6,300,000 based on 4EC's SAC.

Thus, whichever method of calculation is used, the dollar amount claimed by 4EC, exclusive of interest and costs, exceeds the jurisdictional minimum of $5,000,000.

**B.    This Notice Is Timely Filed.**

This Notice of Removal is timely filed as required by 28 U.S.C. § 1446(b), because no time period for filing a notice of removal has expired in this case.

28 U.S.C. § 1446(b)(1) provides that, in general, a notice of removal must be filed within thirty days after receipt of the initial pleading setting forth a claim for relief.  However, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  *Id.* § 1446(b)(3).

Neither of these thirty-day periods was triggered in this case.  As indicated above, the Original Complaint was not removable on its face, as it failed to allege even an estimate of class size or an amount in controversy.  Thus, the initial thirty-day period under 28 U.S.C. § 1446(b)(1) was not triggered.  *See Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1237–38 (9th Cir. 2014) (per curiam) ("[W]e have held 'that the thirty day time period [for removal] . . . starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face the facts necessary for federal court jurisdiction.'" (quoting *Harris v. Bankers Life and Cas. Co.*, 425 F.3d

NOTICE OF REMOVAL                                                    USDC N.D. CA CASE NO. _____

689, 691–92 (9th Cir. 2005))).

Likewise, the FAC did not constitute an amended complaint from which Linebarger could ascertain that the case was removable.  Like the Original Complaint, the FAC failed to plead the size of the proposed class or the amount in controversy.

The SAC alleged the class size to be in the tens of thousands and estimated damages as "millions." This prompted Linebarger to conduct the investigation necessary to determine the amount in controversy.   It was through Linebarger's analysis that it became apparent that the amount in controversy exceeded $5,000,000—an analysis undertaken after 4EC had enlarged the class size considerably.

Thus, neither of the periods for removal was triggered in this case, and consequently, Linebarger is entitled to remove the case now that it has discovered, on its own investigation, that the case is removable.  As the Ninth Circuit has made clear, "the two 30-day periods are not the exclusive periods for removal. . . .   In other words, as long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30-day time period never starts to run *and the defendant may remove at any time*."  *See Rea*, 742 F.3d at 1238 (emphasis added) (citing *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1124–25 (9th Cir. 2013)).  Here, Linebarger is removing now that it has determined and can demonstrate that the amount in controversy of the case as stated in the SAC exceeds $5,000,000.  Thus, removal is timely.

The Ninth Circuit has recently confirmed that where the face of the complaint does not make clear whether the jurisdictional requirements are satisfied, the defendant does not bear the burden of investigating jurisdictional facts and supplying information that a plaintiff has omitted.  *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139, 1141 (9th Cir. 2013).  The purpose of such a rule is to prevent "embroil[ing] the courts in inquiries 'into the subjective knowledge of a defendant.'" *Id.* at 1141 (quoting *Harris*, 425 F.3d at 695).  The law "forces plaintiffs to assume the costs associated with their own indeterminate pleadings." *Id.*   In *Kuxhausen*, where the plaintiff's complaint failed to allege a class-wide amount in controversy, the Court rejected the argument that the removing defendant, BMW, should have consulted its business records to determine the amount

-7-

at stake—a task BMW eventually performed on its own initiative—holding that "BMW was not obligated to supply information which Kuxhausen had omitted." *Id.*

Under *Kuxhausen*, Linebarger was not required to bear the burden of investigating jurisdictional facts omitted by 4EC for fear of waiving the right of removal. However, Linebarger is entitled to remove once it has determined, based on its own voluntary investigation, that the case is removable. *See Roth*, 720 F.3d at 1123.

**C.      Linebarger Has Complied with All Other Applicable Procedural Rules.**

In accordance with 28 U.S.C. § 1446(d), a notice of filing of removal, with a copy of the Notice of Removal attached, will be filed with the clerk of the Superior Court of California in and for the City and County of San Francisco, Case No: CGC-13-531744, and Linebarger will serve a copy of this Notice of Removal on 4EC's attorneys. Additionally, pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Linebarger is being filed concurrently with this Notice of Removal as a manually filed appendix in light of its volume.

**D.      CAFA's Exceptions Do Not Apply.**

The exceptions to removal contained in 28 U.S.C. §§ 1332(d) and 1446 do not apply. This action does not concern a covered security, does not relate to the internal affairs or governance of a corporation or other form of business enterprise, and does not relate to the rights, duties, and obligations relating to or created by or pursuant to any security. *See id.* § 1332(d)(9) (excepting such actions from CAFA jurisdiction). Further, no discretionary basis for remand exists under 28 U.S.C. § 1332(d)(3), and no mandatory basis for remand exists under 28 U.S.C. § 1332(d)(4), because the defendant is not a citizen of California, the state in which this case was originally filed.

**III.**

**CONCLUSION**

For the foregoing reasons, Linebarger respectfully notifies this Court that pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, it has removed the above action from the Superior Court of California in and for the City and County of San Francisco to this Court for determination of all claims asserted and defenses made. Linebarger prays that all further proceedings in the state court be stayed, and that Linebarger be granted all additional relief to which it may be justly entitled. By

-8-

this Notice, Linebarger intends no admission of liability and reserves all defenses, motions, and pleas.

Dated:  April 28, 2014                          VINSON & ELKINS LLP


                                               By:    /s/ Michael L. Charlson
                                                      Michael L. Charlson

                                               Attorneys for Defendant
                                               LINEBARGER GOGGAN BLAIR &
                                               SAMPSON LLP, a Texas limited liability
                                               partnership

# EXHIBIT A

1   WILLIAM McGRANE [057761]
    McGRANE LLP
2   Four Embarcadero Center, Suite 1400
    San Francisco, California 94111
3   Telephone: (415) 292-4807
    william.mcgrane@mcgranellp.com
4

5   MATTHEW J. SHIER [072638]
    LINDA SORENSEN [072753]
6   shierkatz RLLP
    930 Montgomery Street, 6th Floor
7   San Francisco, CA 94133
    Telephone: (415) 691-7027
8   mshier@shierkatz.com

9   JONATHAN BASS [075779]
    MARK L. HEJINIAN [281417]
10  COBLENTZ PATCH DUFFY & BASS LLP
    One Ferry Building, Suite 200
11  San Francisco, CA 94111
    Telephone: (415) 772-5726
12  jbass@cpdb.com

13  Attorneys for Plaintiff 4EC Holdings, LLC, a Delaware limited liability company, on behalf of
    itself and all others similarly situated
14

15              SUPERIOR COURT OF CALIFORNIA

16       IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

17  4EC HOLDINGS, LLC, a Delaware limited        Case No: CGC-13-531744
    liability company, individually and on behalf of a
18  class of similarly situation persons and entities,   CLASS ACTION

19                        Plaintiff,              **SECOND AMENDED COMPLAINT
    vs.                                           FOR VIOLATION OF THE UNFAIR
20                                                COMPETITION LAW; INJUNCTION
    LINEBARGER GOGGAN BLAIR & SAMPSON            TO PREVENT FUTURE ACTS OF
21  LLP, a Texas limited liability partnership,   UNFAIR COMPETITION**

22                        Defendant.

23

24

ELECTRONICALLY
**F I L E D**
*Superior Court of California,
County of San Francisco*
**APR 24 2014**
Clerk of the Court
BY: WILLIAM TRUPEK
Deputy Clerk

1     Comes now Plaintiff 4EC Holdings, LLC and alleges as follows:

2                                    **The Parties**

3     1.     Plaintiff 4EC Holdings, LLC (4EC) is a Delaware limited liability company with its

4     principal place of business in San Francisco, California.

5     2.     Defendant Linebarger Goggan Blair & Sampson LLP (the Texas Law Firm) is a

6     Texas limited liability partnership with its principal place of business in Austin, Texas.

7                                 **General Allegations**

8     3.     Prior to December 15, 2011, 4EC was the sole shareholder of Ferry Claims, LLC

9     (Ferry), which was a California limited liability company with its principal place of business in San

10    Francisco, California.

11    4.     On December 15, 2011, 4EC dissolved Ferry.

12    5.     Again on December 15, 2011, and by means of a contemporaneous written

13    agreement to that effect, 4EC specifically assumed personal liability for all of Ferry's debts and

14    obligations.

15    6.     Again on December 15, 2011, as a matter of law, 4EC assumed personal liability for

16    all of Ferry's debts and obligations to the extent of certain cash and other personal property, valued

17    in excess of $10,000, that was transferred from Ferry to 4EC following December 15, 2011.

18    7.     The Texas Law Firm has been registered with the California Secretary of State as a

19    foreign limited liability partnership for the purpose of practicing law in California (a Registered

20    Foreign Law Limited Liability Partnership or RFLLLP) since February 6, 2002, through and

21    including the present date.

22    8.     The period of time encompassing February 6, 2002, and up to and including

23    September 25, 2013, is hereafter referred to as the First Part of the Relevant Period and the period

24    of time following September 25, 2013, on into the future up until final judgment is rendered in this

2

Second Amended Complaint for Violation of the Unfair Competition Law;
Injunction to Prevent Future Acts of Unfair Competition

1   case, is hereafter referred to as the Second Part of the Relevant Period.  Both said periods are

2   hereafter collectively referred to as the Overall Relevant Period.

3                                    **Charging Allegations**

4        9.        During the First Part of the Relevant Period—despite the requirements of

5   Corporations Code § 16959(a)(1) that it "comply with all … the rules and regulations governing

6   [the] particular profession in which the [RFLLLP] proposes to be engaged …"—the Texas Law

7   Firm never employed any active member of the State Bar (California lawyer(s)) as either partners

8   or employees.

9        10.       Following the First Part of the Relevant Period the Texas Law Firm has employed

10  John Clinnin Esq., SBN 153881 (Attorney Clinnin).

11       11.       State Bar of California Standing Committee on Professional Responsibility and

12  Conduct (the State Bar Committee), issued Formal Opinion No. 1982-68 (the State Bar Opinion

13  [Exhibit 1 hereto]) in which the State Bar Committee opined, *inter alia*, that (i) any California

14  lawyer who undertakes to represent a client for purposes of collecting a debt owed that client by

15  any third person(s) (debtor(s)) (ii) thereby assumes a professional responsibility to personally

16  supervise his or her clerical employees before sending out demand letters on his or her law office

17  stationary seeking to collect money from such debtors so as to personally and reasonably attempt to

18  verify that such demand letters only stated as amounts due from such debtors such amounts as were

19  in fact due from such debtors.

20       12.       Consistent with the State Bar Opinion (Exhibit 1), it is a violation of California

21  ethical law for a California lawyer to authorize his or her clerical employees (i) to send out demand

22  letters seeking to collect a debt owed a client by a debtor utilizing a California lawyer's law office

23  stationary (ii) without that California lawyer's having personally and reasonably supervised that

24  California lawyer's clerical employees so as to personally and reasonably attempt to verify that

1   such demand letters only stated as amounts due from such debtors such amounts as were in fact

2   due from such debtors

3       13.     It is also a violation of both Business & Professions Code §§ 6125 and 6126 for any

4   RFLLLP, specifically including, but not limited to, the Texas Law Firm, to engage in intrastate

5   business (as defined at Corporations Code § 16959(l)), by practicing law in California by falsely

6   holding itself out as being comprised of "Attorneys at Law" at a time when none of the RFLLLP's

7   partners or employees were California lawyers (Illegally Practicing Law by Means of False

8   Holding Out).

9       14.     During the First Part of the Relevant Period, the Texas Law Firm engaged in

10  Illegally Practicing Law by Means of False Holding Out by falsely holding itself out to various

11  California governmental entities (California Governments) as being comprised of "Attorneys at

12  Law" at a time when none of the Texas Law Firm's partners or employees were California lawyers.

13      15.     As a direct, natural and proximate result of its Illegally Practicing Law by Means of

14  False Holding Out during the First Part of the Relevant Period, the Texas Law Firm entered into

15  numerous engagement agreements with various California Governments for purposes of having it

16  (the Texas Law Firm) collect debts owed to California Governments by persons and entities

17  residing in California (California Citizens) by way, *inter alia*, of having the Texas Law Firm send

18  out demand letters seeking to collect money from California Citizens utilizing the Texas Law

19  Firm's own law office stationary, prominently featuring the fact the Texas Law Firm was

20  comprised of "Attorneys at Law" (the Texas Lawyer Scare Letters).

21      16.     Because the Texas Law Firm never had any California lawyers as either partners or

22  employees during the First Part of the Relevant Period, the numerous engagement agreements the

23  Texas Law Firm entered into with California Governments during the First Part of the Relevant

24  Period for the sole and unlawful object of having the Texas Law Firm represent said California

1    Governments for purposes of collecting debts from California Citizens were and are all null and

2    void as a matter of public policy pursuant to Civil Code § 1598 (the Void Texas Lawyer

3    Engagement Agreements).

4          17.    The Void Texas Lawyer Engagement Agreements therefore have never created any

5    valid principal-agent relationship between the Texas Law Firm and any California Governments.

6    This specifically includes—but is not limited to—the particular Void Texas Lawyer Engagement

7    Agreement that the Texas Law Firm has previously entered into with the City and County of San

8    Francisco (The City).

9          18.    On March 14, 2013, the Texas Law Firm, acting as purported "Attorneys at Law"

10    representing The City for purposes of collecting a debt, sent the by-then dissolved Ferry a Texas

11    Lawyer Scare Letter (Exhibit 2 hereto) which demanded that Ferry pay the Texas Law Firm a by-

12    then delinquent Business Registration Fee of twenty-five dollars ($25) covering fiscal year July 1,

13    2011, through June 30, 2012; plus an additional fifty dollars ($50) for Administrative Penalties;

14    and an additional fifteen dollars ($15) for Collection Fees:  all for a sum total claimed due of ninety

15    dollars ($90).

16          19.    On April 18, 2013, the Texas Law Firm, again acting as purported "Attorneys at

17    Law" representing The City for purposes of collecting a debt, sent the by-then dissolved Ferry a

18    second Texas Lawyer Scare Letter (Exhibit 3 hereto) which again demanded that Ferry pay the

19    Texas Law Firm a by-then delinquent Business Registration Fee of twenty-five dollars ($25)

20    covering fiscal year July 1, 2011, through June 30, 2012; plus an additional fifty dollars ($50) for

21    Administrative Penalties; and an additional fifteen dollars ($15) for Collection Fees:  all for a sum

22    total claimed due of ninety dollars ($90).

23          20.    In response to the Texas Lawyer Scare Letters (Exhibits 2-3)—and, *inter alia*,

24    because it was otherwise concerned about the risk of incurring further penalties and fees on top of

1    the fifty dollars ($50) in Administrative Penalties and fifteen dollars( $15) in Collection Fees which

2    had already been assessed against it in addition to the normal twenty-five dollar ($25) Business

3    Registration Fee which both Ferry and 4EC had always previously and timely paid to The City—

4    4EC transmitted ninety dollars ($90) to the Texas Law Firm on Ferry's behalf on May 15, 2013,

5    (the May 15 Payment).

6          21.    The May 15 Payment was made by way of a Cashier's Check made payable to the

7    Texas Law Firm that was initially purchased by 4EC's legal counsel, McGrane LLP, for which

8    ninety dollar ($90) expense McGrane LLP was subsequently reimbursed by 4EC.

9          22.    But for 4EC's reasonable belief that the Texas Law Firm was qualified to practice

10    law in California, 4EC would not have made the May 15 Payment to the Texas Law Firm.

11          23.    4EC subsequently learned that the Texas Law Firm was not qualified to practice law

12    in California, lacked the legal authority to make demand on 4EC for payment of any amounts

13    purportedly owed to any California Governments, and lacked the legal authority to accept or

14    disburse the ninety dollars ($90) paid to it by 4EC in response to its demand.

15          24.    As a direct, natural and proximate result of (i) 4EC's receipt of the Texas Lawyer

16    Scare Letters (Exhibits 2-3), and (ii) the fact the Texas Law Firm was not qualified to practice law

17    in California, lacked the legal authority to make demand on 4EC for payment of any amounts

18    purportedly owed to any California Governments, and lacked the legal authority to accept or

19    disburse the ninety dollars ($90) paid to it by 4EC in response to its demand, 4EC was unlawfully,

20    unfairly and fraudulently induced to pay the Texas Law Firm ninety dollars ($90) and has

21    thereafter been deprived of the possession and use of said ninety dollars ($90).

22          25.    During the Second Part of the Relevant Period—in violation of California law and

23    without ever obtaining any ratification of the Void Texas Lawyer Engagement Agreements by the

24    affected California Governments—the Texas Law Firm has continued to generate Texas Lawyer

6

Second Amended Complaint for Violation of the Unfair Competition Law;
Injunction to Prevent Future Acts of Unfair Competition

1    Scare Letters without Attorney Clinnin's personally supervising any aspect of their generation,

2    with the Texas Law Firm instead continuing to rely on its computer-based systems, supervised

3    entirely by persons who are not California lawyers, in order to generate such Texas Lawyer Scare

4    Letters.

5                                    **Class Allegations**

6         26.    4EC brings this action on behalf of itself and all others similarly situated.

7         27.    The class represented by 4EC (Class) is comprised of the following persons and

8    entities:  all California Citizens who paid the Texas Law Firm money in response to the Texas

9    Lawyer Scare Letters during the Overall Relevant Period (members of the Class).

10        28.    The class period is the Overall Relevant Period.

11        29.    No members of the Class could reasonably have discovered that the Texas Law

12   Firm was not qualified to practice law in California until after the May 15 Payment was first made

13   by 4EC.  Therefore, any applicable statute of limitations respecting the unfair competition claims

14   alleged herein were tolled and did not otherwise begin to run until a date no earlier than May 16,

15   2013.

16        30.    On information and belief, 4EC alleges that there are tens of thousands of members

17   of the Class.  The identities of the members of the Class can be readily ascertained from the

18   business records of the Texas Law Firm.

19        31.    Questions of law and fact common to the Class predominate over questions

20   affecting only individual members, including, *inter alia:*

21        •      Whether its entering into the Void Texas Lawyer Engagement Agreements

22               during the First Part of the Relevant Period constitutes the Texas Law Firm's Illegally

23               Practicing Law by Means of False Holding Out.

24

1        •     Whether its sending out Texas Lawyer Scare Letters during the First Part of

2 the Relevant Period constitutes the Texas Law Firm's Illegally Practicing Law by

3 Means of False Holding Out.

4        •     Whether its sending out Texas Lawyer Scare Letters during the Second Part of

5 the Relevant Period constitutes the Texas Law Firm's Illegally Practicing Law by

6 Means of False Holding Out.

7        •     Whether the Texas Law Firm is entitled to retain any portion of the money it

8 obtained from the Class during the Overall Relevant Period.

9      32.     The claims of 4EC are typical of the claims of the members of the Class as

10 described above.

11      33.     Treating this dispute as a class action is a superior method of adjudication since the

12 joinder of all possible absent members of the Class would be impractical.  Additionally, the amount

13 of each restitutionary payment would be modest on an individual basis, although significant in the

14 aggregate.  It would be impractical for most of the members of the Class to address the Texas Law

15 Firm's wrongdoings individually.  There should be no significant difficulties in managing this case

16 as a class action.

17      34.     4EC can and will fairly and adequately represent and protect the interests of the

18 members of the Class.  4EC has retained competent and experienced counsel, who will vigorously

19 represent the interests of the Class.

20                            **First Cause of Action**

21              **(Unfair Competition [Bus. & Prof. C. §§ 17200 et. seq.])**

22      35.     4EC realleges the allegations contained in Paragraphs 1-34.

23      36.     The Texas Law Firm's making *ultra vires* demands and Illegally Practicing Law by

24 Means of False Holding Out by means of its sending Texas Lawyer Scare Letters to California

1    Citizens during the First Part of the Relevant Period; the Texas Law Firm's failure to ever obtain

2    ratification of the Void Texas Lawyer Engagement Agreements during the Second Part of the

3    Relevant Period; and, finally, the Texas Law Firm's sending out Texas Lawyer Scare Letters in

4    violation of California law throughout the Overall Relevant Period (collectively the Texas Law

5    Firm's Misconduct) all render the Texas Law Firm guilty of unfair competition under Business &

6    Professions Code §§ 17200 et. seq., in that the Texas Law Firm's Misconduct, and each aspect

7    thereof, constitutes each of the following:  (i) unlawful business acts; (ii) unfair business acts and

8    (iii) fraudulent business acts.

9        37.     The Texas Law Firm therefore has violated and is violating Business & Professions

10   Code § 17203.

11        WHEREFORE 4EC prays judgment as hereafter set forth.

12                 **Second Cause of Action**

13    **(Injunction to Prevent Future Acts of Unfair Competition [Bus. & Prof. C. § 17203])**

14        38.     4EC realleges the allegations contained in Paragraphs 1-37.

15        39.     Unless the Texas Law Firm is enjoined, it will continue to send out Texas Lawyer

16   Scare Letters to California Citizens in violation of California law as well as without seeking any

17   ratification of the Void Texas Lawyer Engagement Agreements from California Governments.

18        40.     On information and belief, 4EC estimates the Texas Law Firm has collected

19   millions of dollars from California Citizens during the Overall Relevant Period by sending out

20   Texas Lawyer Scare Letters.

21        41.     California Citizens, including but not limited to members of the Class, will suffer

22   irreparable injury unless an injunction is issued to prevent the future use by the Texas Law Firm of

23   Texas Lawyer Scare Letters which are not first properly vetted by California lawyers who are also

24   partners or employees of the Texas Law Firm.

9

Second Amended Complaint for Violation of the Unfair Competition Law;
Injunction to Prevent Future Acts of Unfair Competition

1    WHEREFORE, 4EC prays:

2        A.    That the Class described herein be certified;

3        B.    That the Court enjoin the Texas Law Firm from any further violations of the Unfair

4    Competition Law by way of its sending out Texas Lawyer Scare Letters (i) when the Texas Law

5    Firm is not otherwise properly employed by a California Government pursuant to a *bona fide*

6    retention agreement that was not itself obtained by the Texas Law Firm's Illegally Practicing Law

7    by Means of False Holding Out and (ii) which Texas Lawyer Scare Letters have not been first

8    properly vetted by California lawyers who are also partners or employees of the Texas Law Firm.

9        C.    For full and complete restitution of all monies which the Texas Law Firm has

10   obtained from the Class during the Overall Relevant Period on account of its sending out the Texas

11   Lawyer Scare Letters to members of the Class;

12       D.    For an award of attorney's fees and costs;

13       E.    For such other and further relief as the Court may deem just and proper.

14   Dated:  April 23, 2014              COBLENTZ PATCH DUFFY & BASS LLP
                                        McGRANE LLP
15                                      shierkatz RLLP

16

17                                      By:_____
                                            Jonathan R. Bass
18                                      Attorneys for Plaintiffs

19

20

21

22

23

24

# EXHIBIT 1

**STATE BAR OF CALIFORNIA**
**STANDING COMMITTEE ON**
**PROFESSIONAL RESPONSIBILITY AND CONDUCT**
**FORMAL OPINION NO. 1982-68**

**ISSUE**:                  Creditor client's use of attorney demand letters on delinquent accounts.

**DIGEST**:                An attorney who has been retained by a creditor for collection matters may use his or her creditor-client's employees to aid in the preparation of form letters to delinquent debtors on the attorney's stationery and over his or her signature, provided that the attorney properly supervises the employees. The attorney must ensure that he or she is not (1) lending his or her name to a non-lawyer; (2) aiding the unauthorized practice of law; and that (3) the letters are not deceptive; and (4) the attorney is not assisting the client to violate the law.

**AUTHORITIES**
**INTERPRETED**:       Rules 3-101, 6-102 and 7-101 of the Rules of Professional Conduct of the State Bar of California.

Business and Professions Code sections 6067, 6105, 6106, 6125, 6863 and 6947

Civil Code sections 1788.2(c) and 1788.13(c)

**DISCUSSION**

Creditors with a large number of accounts may wish to send form letters to delinquent debtors on an attorney's letterhead and over an attorney's signature. Such letters are frequently computer-generated. We have been asked whether, and under what circumstances, attorneys may permit such letters to be sent.  Although an attorney may use the creditor-client's employees to assist in handling collection matters, the attorney must adequately supervise the employees to ensure that:

     (1)     The attorney is not lending his or her name to a non-lawyer.

     (2)     In permitting a creditor-client to send such letters, the attorney is not aiding the unauthorized practice of law.

     (3)     The letters are not deceptive.

     (4)     The letters do not violate the law.

**A.       Attorney's Use of Client's Employees**

In many cases it will be economical and efficient for a creditor-client's employees, who will be most familiar with the creditor's accounts, to assist the attorney in debt collection matters. An attorney retained by a creditor may use the creditor's employees to aid in the attorney's representation of the creditor.  A lawyer may delegate tasks to his or her office staff provided he or she accept responsibility to supervise the work of the staff. American Bar Association Code of Professional Responsibility, Ethical Consideration 3-6, provides:

> "A lawyer often delegates tasks to clerks, secretaries, and other lay persons. Such delegation is proper if the lawyer maintains a direct relationship with his client, supervises the delegated work, and has complete professional responsibility for the work product. This delegation enables a lawyer to render legal service more economically and efficiently."

(See Bus. & Prof. Code; § 6067; *Spindell v. State Bar* (1975) 13 Cal.3d 253, 261 [118 Cal.Rptr. 480; 530 P.2d 168]; *Vaughn v. State Bar* (1972) 6 Cal.3d 847, 857 [100 Cal. Rptr. 713; 494 P.2d 1257]; *Moore v. State Bar* (1964) 62 Cal.2d 74 [41 Cal.Rptr. 161; 396 P.2d 577]; *Sanchez v. State Bar* (1976) 18 Cal.3d 280 [133 Cal.Rptr. 768; 555 P.2d 889].)

In debt collection matters, as in other legal matters, a member of the bar may delegate tasks to non-lawyer assistants. For efficiency, the creditor may wish to make available its own employees to assist the attorney in evaluating and possibly taking legal action to collect debts. The attorney may delegate tasks to the creditor-client's agents or employees provided that the lay assistants are under the direction and control of the attorney and that the attorney supervises their work. Collection agency regulations recognize this practice:

> "All clerical work delegated by the attorney of record shall be under the direction and control of that attorney. Should an attorney delegate clerical work to a person on the payroll of a collection agency, said delegation shall be in writing and shall specifically set forth the work to be done." (16 Cal. Admin. Code, § 628 subd. (b).)

The extent to which a lawyer must supervise those to whom he or she has delegated work depends on the nature of the delegated task. The attorney must exercise the degree of control over a creditor-client's employees that he or she would be required to exercise over his or her own employees engaged in the same task on behalf of his or her law firm or law office. The attorney is professionally responsible for all work performed by the creditor's employees, just as he or she would be as to his or her own employees.

Debt collection matters will vary from complex to routine. Routine debt collection letters may justify the use of form letters, just as other routine matters may justify the use of form letters. Although an attorney may utilize a creditor-client's employees to help determine whether a particular case justifies the sending of a form letter, and to prepare a form letter, those employees must in fact be working under the direction of and on behalf of the attorney when they are engaged in such collection activities.

Thus, the attorney is responsible for the accuracy of all letters sent to debtors on his or her letterhead. "In our view, it is not enough that the lawyer rely upon the client's certification of the 'validity' of the account. The lawyer must take responsibility for the reasonable accuracy of each letter and must exercise due care that no letter misstates a fact with respect to the account of the debtor." (ABA Committee on Ethics and Prof. Responsibility, informal opn. No. 1368 (1976).)

In deciding the extent to which he or she must direct, control and supervise the creditor and its employees when they perform work on his or her behalf, including preparation of attorney letters, the attorney must have in mind the need to avoid the following ethical violations.

### (1)   **Lending Name to a Non-Lawyer**

Business and Professions Code section 6105 provides:

> "Lending his name to be used as attorney by another person who is not an attorney constitutes a cause for disbarment or suspension."

*McGregor v. State Bar of California* (1944) 24 Cal.2d 283 [148 P.2d 865] concerned an attorney who had permitted his employee, a layperson, to use the attorney's name as an attorney in the operation of a collection agency within his law office. The employee was authorized to interview clients, fix fees and write letters, signing the attorney's name. In a particular instance, a client thought the employee was the attorney. The attorney's legal and collection affairs were so intermingled that it was difficult to distinguish them. The court found this to be a violation of section 6105 of the Business and Professions Code. (See also *Townsend v. State Bar* (1930) 210 Cal. 362 [291 P. 837].)

2

A lawyer who permits a non-lawyer to generate letters on his or her stationery and over his or her signature without taking an active role in the matter has lent his or her name to a non-lawyer and would be subject to discipline for violating section 6105 of the Business and Professions Code. (See also L.A. Co. Bar Assn. Legal Ethics Committee, opn. No. 61 (1930).) What constitutes a sufficiently active role in the matter will vary depending on the circumstances. An attorney should not, however, merely permit a client to use his or her stationery and signature.

**(2)      Aiding the Unauthorized Practice of Law**

Rule 3-101(A) of the Rules of Professional Conduct provides: "A member of the State Bar shall not aid any person, association, or corporation in the unauthorized practice of law." Business and Professions Code section 6125 provides that no person shall practice law in California unless he or she is an active member of the bar. In *Smallberg v. State Bar* (1931) 212 Cal. 113, 119 [297 P. 916], the California Supreme Court, citing other authority, defined the practice of law:

> "'As the term is generally understood, the "practice" of the law is the doing or performing services in a court of justice.... But in a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matters may or may not be depending in a court.'"

The rules regulating licensed collection agencies, adopted under Business and Professions Code, sections 6863 and 6947, deem as practicing law "communicating with debtors in the name of an attorney or upon the stationery of an attorney, unless expressly authorized by an attorney" (16 Cal. Admin. Code, § 628.5 subd. (a)(4)) and intervening between a creditor and attorney in any manner which would control or exploit the services of the attorney or which would direct those/services in the interest of a collection agency (16 Cal. Admin. Code, § 628.5 subd. (a)(5)).[1/]

To prevent collection agencies from engaging in the unauthorized practice of law, 16 California Administrative Code section 628.5, subdivision (b)(4), prohibits a collection agency from threatening the commencement of judicial proceedings other than to notify the debtor that the matter will be referred to its attorney for legal action, and that in the event its attorney should file suit, the debtor may as a result become liable for additional costs and expenses.

The preparation and sending of a letter on the stationery of a lawyer which includes a legal conclusion that the debtor is liable for an amount of money owed and which threatens to institute judicial proceedings to collect the debt constitutes the practice of law. Where a lawyer permits such a letter to be sent on his or her stationery, with or without his or her signature, without having expressly authorized the letter in that particular case, the lawyer is conferring upon persons not entitled to practice law the powers and privileges of an attorney. Such a practice violates the proscriptions against aiding and abetting the unauthorized practice of law under rule 3-101 of the Rules of Professional Conduct. As the Supreme Court stated in *Townsend v. The State Bar*, supra, 210 Cal. at pages 364-365:

> "The right to practice law not only presupposes in its possessor integrity, legal standing and attainment, but also the exercise of a special privilege, highly personal and partaking of the nature of a public trust. It is manifest that the power and privileges derived from it may not with propriety be delegated to or exercised by a nonlicensed person. . . If such a practice were allowed, an attorney might have a number of undisclosed associates through his agency exercising the functions of an attorney and counselor, and reaping the rewards flowing therefrom, without resting under any of the responsibilities incident to such a position, and possessing none of the qualifications which the law demands and requires."

---

[1/]     Civil Code section 1788.13(c) regulates only debt collectors who are not attorneys (Civ. Code § 1788.2(c)), which parallels what we have said here and provides:

> ". . . Any communication with a debtor in the name of an attorney or counselor at law or upon stationery or like written instruments bearing the name of the attorney or counselor at law, unless such communication is by an attorney or counselor at law or shall have been approved or authorized by such attorney or counselor at law, . . ."

(See *Spindell v. State Bar*, supra, 13 Cal.3d at 261; *Vaughn v. State Bar*, supra, 6 Cal.3d at 857; *Moore v. State Bar*, supra, 62 Cal.2d at 75; *Sanchez v. State Bar*, supra, 18 Cal.3d at 284.)

### (3)    Deception

A creditor who prepares his or her own letters to delinquent debtors may want to use an attorney's letterhead (as opposed to his or her own) to give his or her letters greater impact. To the lay person who is a delinquent debtor, a letter from an attorney has greater impact than a letter from his or her creditor because of the attorney's ability to pursue legal remedies. A letter from a lawyer may demonstrate to the debtor that his or her creditor has taken a significant step toward collecting the debt. It may imply that the attorney has been retained, has examined the account, determined the debt to be owing and payment to be delinquent, and prepared the letter or directed that it be sent. If, in fact, all that has happened is that a computer or the creditor's clerks will have determined to send a particular form letter, the letter may be deceptive. An attorney is professionally responsible to ensure that there is no such deception. (Bus. & Prof. Code, § 6106.)

### (4)    Advising the Violation of Law

An attorney must exercise his or her best judgment in the exercise of skill to accomplish his or her client's purposes. (Bus. & Prof. Code, § 6067.) The attorney must not advise the violation of any law or rule. (Rules 6-102 and 7-101, Rules Prof. Conduct.) For example, an attorney who uses a creditor-client's employees to send letters on the attorney's letterhead must ensure that in doing so he or she is not permitting the client to violate the law cited above designed to prevent collection agencies from engaging in (1) the practice of law; or (2) misleading communications with debtors.[2/]

### B.    Conclusion

The Committee concludes that, although an attorney may use a creditor-client's employees to aid in the preparation of letters to be sent delinquent debtors,[3/] he or she must take great care to ensure that his or her procedures are not unethical or illegal. We do not opine on whether the practices discussed may violate any state or federal law, rule or regulation, or whether such practices may give rise to civil liability.

This opinion is issued by the Standing Committee on Professional Responsibility and Conduct of The State Bar of California. It is advisory only. It is not binding upon the courts, The State Bar of California, its Board of Governors, any persons or tribunals charged with regulatory responsibilities, or any member of the State Bar.

---

[2/]    Although governmental agencies may regulate debt collection practices, they have no authority to discipline attorneys for professional misconduct. The power to discipline attorneys is an inherent judicial power. The legislature is forbidden by the California Constitution from conferring such power upon a governmental board or agency. (See *Katz v. Workers' Compensation Appeals Board* (1981) 30 Cal.3d 353 [178 Cal.Rptr. 815; 636 P.2d 1153] and *Hustedt v. Workers' Compensation Appeals Board* (1981) 30 Cal.3d 329 [178 Cal.Rptr. 801; 636 P.2d 1139].)

[3/]    Cf. Los Angeles Bar Association Legal Ethics Committee, opinions No. 338 (1973) and No. 402 (1982).  (See also section A.(2) of this opinion and footnote I thereunder.)

# EXHIBIT 2

**Linebarger Goggan Blair & Sampson, LLP**
ATTORNEYS AT LAW
THE CLEVELAND OFFICE BUILDING
1515 CLEVELAND PLACE, SUITE 300
DENVER, CO 80202
1(866) 280-4153  1(800) 677-1934 Fax

| DEBTOR NAME AND ADDRESS | DATE OF NOTICE | LGB&S ACCOUNT NUMBER |
|---|---|---|
| FERRY CLAIMS LLC<br>91 25TH AVE<br>SAN FRANCISCO CA 94121-1104 | MARCH 14, 2013 | 43159678 |

## CITY AND COUNTY OF SAN FRANCISCO BUREAU OF DELINQUENT REVENUE STATEMENT

| BDR ACCOUNT NUMBER | DEPARTMENT CODE | ACCOUNT DESCRIPTION | AMOUNT DUE |
|---|---|---|---|
| 2332208 | 2012YRRG | BUSINESS REGISTRATION FEE | $90.00 |
| | | **TOTAL** | **$90.00** |

YOUR CHECK MAY BE CONVERTED TO AN ELECTRONIC TRANSFER. WHEN WE USE INFORMATION FROM YOUR CHECK TO MAKE AN ELECTRONIC FUND TRANSFER, FUNDS MAY BE WITHDRAWN FROM YOUR ACCOUNT AS SO ON AS THE SAME DAY WE RECEIVE YOUR PAYMENT, AND YOU WILL NOT RECEIVE YOUR CHECK BACK FROM YOUR FINANCIAL INSTITUTION.

IF YOU HAVE ALREADY PAID THIS ACCOUNT IN FULL, PLEASE DISREGARD THIS NOTICE.

| $90.00 |
|---|
| **PAY THIS AMOUNT** |

**YOU MUST INCLUDE THE BELOW STUB WITH YOUR PAYMENT IN ORDER TO INSURE PROPER CREDIT.**

........................................................................................................................................

DEBE INCLUIR ESTE TALONARIO JUNTO CON EL PAGO CORRESPONDIENTE PARA ACREDITAR LA TRANSACCIÓN.

Linebarger Goggan Blair & Sampson, LLP
PO Box 659443
San Antonio, Texas 78265

MAKE YOUR PERSONAL CHECK OR MONEY ORDER PAYABLE TO:
Linebarger Goggan Blair & Sampson, LLP
To pay online by credit card, please call 1(866) 280-4153 or log on to http://www.lgbswebpayments.com and use **Client Code CACCSFRF1** and **Online Payment Number 43159678**.

| LGB&S ACCOUNT NUMBER | AMOUNT DUE |
|---|---|
| 43159678 | $90.00 |
| AMOUNT PAID: | |

#BWNKBYR
#C0000431596786#
FERRY CLAIMS LLC
91 25TH AVE
SAN FRANCISCO CA 94121-1104

LGB&S, LLP
CLIENT #:  CACCSFRF1
PO BOX 702118
SAN ANTONIO TX 78270



# Linebarger Goggan Blair & Sampson, LLP

ATTORNEYS AT LAW
THE CLEVELAND OFFICE BUILDING
1515 CLEVELAND PLACE, SUITE 300
DENVER, CO 80202
1(866) 280-4153 1(800) 677-1934 Fax

MARCH 14, 2013

43159678

FERRY CLAIMS LLC
91 25TH AVE
SAN FRANCISCO CA 94121-1104

Debtor: FERRY CLAIMS LLC
Account No:   2332208
Amount Due to City & County of San
Francisco BDR:
$90.00 as of MARCH 14, 2013

## *NOTICE OF DEBT*

Dear FERRY CLAIMS LLC:

Please be advised that this law firm has been retained by the City & County of San Francisco Bureau of Delinquent Revenue for resolution of the above-listed account(s). According to our client, you have an outstanding debt, in the amount shown above, owing to the City & County of San Francisco Bureau of Delinquent Revenue for fees and fines.

Payment relating to this account may be made by forwarding funds, along with the enclosed identification coupon, in the enclosed response envelope. Payments by mail must be in the form of a money order or personal check made payable to Linebarger Goggan Blair & Sampson, LLP. To pay by credit card, please call 1(866) 280-4153 or log on to **http://www.lgbswebpayments.com** and use **Client Code CACCSFRF1** and **Online Payment Number 43159678**.

Unless, within thirty days after receipt of this notice, you dispute the validity of the debt or any portion thereof, we will assume the debt to be valid. If, within thirty days after your receipt of this notice, you notify us, in writing, that the debt or any portion thereof is disputed, we will obtain a verification of the debt or a copy of a judgment, if any, and we will mail to you a copy of such verification or judgment.

This firm is a debt collector. We are attempting to collect a debt and any information obtained will be used for that purpose. At this time, no attorney with this firm has personally reviewed the particular circumstances of your account.

Very truly yours,

Linebarger Goggan Blair & Sampson, LLP



**NOTICE: SEE REVERSE SIDE FOR ADDITIONAL INFORMATION.**

We are required under various State laws to notify consumers of the following rights. This list does not include a complete listing of rights consumers may have under State and Federal Law.
**\*This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.**


## ADDITIONAL INFORMATION FOR MASSACHUSETTS RESIDENTS: NOTICE OF IMPORTANT RIGHTS

You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to us at our law firm address.

## ADDITIONAL INFORMATION FOR CALIFORNIA RESIDENTS:

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

## ADDITIONAL INFORMATION FOR COLORADO RESIDENTS:

FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA.

A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any action authorized by law to collect the debt.

## ADDITIONAL INFORMATION FOR MINNESOTA RESIDENTS:

This collection agency is licensed by the Minnesota Department of Commerce.

## ADDITIONAL INFORMATION FOR TENNESSEE RESIDENTS:

This collection agency is licensed by the Collection Service Board State Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, Tennessee 37243.


\*The following applies to any recipient of this letter who is entitled to the protections afforded by the United States Bankruptcy Code. This letter is for informational and verification purposes only. This letter is not a demand for payment nor an attempt to collect, assess or recover a claim against you that arose before the commencement of your case. In the event you have filed for bankruptcy protection, please notify us in writing and provide to us your case number and identify the Court in which your case is pending.

# Linebarger Goggan Blair & Sampson, LLP

ATTORNEYS AT LAW
THE CLEVELAND OFFICE BUILDING
1515 CLEVELAND PLACE, SUITE 300
DENVER, CO 80202
1(866) 280-4153 1(800) 677-1934 Fax

MARCH 14, 2013

43159678

FERRY CLAIMS LLC
91 25TH AVE
SAN FRANCISCO CA 94121-1104

Deudor:  FERRY CLAIMS LLC
No. de Cuenta:   2332208
Cantidad Pagadera al City & County of San
Francisco BDR:
$90.00 al MARCH 14, 2013

## *AVISO DE DEUDA*

Estimado FERRY CLAIMS LLC:

Por favor tenga en cuenta que nuestro bufete de abogados ha sido contratado por al City & County of San Francisco Bureau of Delinquent Revenue para resolver la(s) cuenta(s) indicada(s) más arriba.  Según nuestro cliente, usted tiene una deuda por la cantidad indicada más arriba pagadera al City & County of San Francisco Bureau of Delinquent Revenue por cuotas o multas no pagadas.

El pago relacionado con esta cuenta puede hacerse enviando el monto, junto con el cupón de identificación adjunto, en el sobre de devolución adjunto.  El pago deberá enviarse en forma de giro postal o cheque personal a nombre de Linebarger Goggan Blair & Sampson, LLP.  Para pagar con tarjeta de crédito, llame al 1(866) 280-4153 o vaya a **http://www.lgbswebpayments.com** y use el **Client Code** **CACCSFRF1** y utilice el **Online Payment Number** **43159678**.

A menos que dispute la validez de la deuda, o de cualquier parte de la misma, en un plazo de treinta días después de recibir esta notificación, daremos por hecho que la deuda es válida.  Si, en un plazo de treinta días después de recibir esta notificación, usted nos notifica por escrito que disputa la deuda, o cualquier parte de la misma, obtendremos una verificación de la deuda o una copia de la sentencia, de haberla, y le enviaremos una copia de dicha verificación o sentencia.

Esta firma es una recaudadora de deudas.  Esto es un intento de cobrar una deuda y cualquier información que se obtenga se utilizará para ese propósito.  Por ahora, ningún abogado de esta firma ha examinado personalmente las circunstancias particulares de su cuenta.

Muy atentamente,

Linebarger Goggan Blair & Sampson, LLP



**AVISO: CONSULTE AL DORSO PARA OBTENER MÁS INFORMACIÓN**

Estamos obligados bajo varias leyes estatales a notificar a los consumidores de los siguientes derechos. Esta lista no incluye el número total de derechos que los consumidores puedan tener bajo la ley estatal y federal.

**\*Esta comunicación es de un cobrador de deudas. Estamos tratando de cobrar una deuda y cualquier información obtenida se utilizará para ese propósito.**

**INFORMACIÓN ADICIONAL PARA LOS RESIDENTES DE MASSACHUSETTS: AVISO DE DERECHOS IMPORTANTES**
Usted tiene el derecho de hacer una solicitud verbal o por escrito para que las llamadas hechas con respecto a su deuda no se le hagan a su centro de trabajo. Cualquier solicitud verbal de este tipo será válida sólo por diez (10) días, a menos que entregue o envíe (comprobando con el sello de correo) una confirmación de la solicitud por escrito dentro de siete (7) días después de dicha solicitud verbal. Usted puede efectuar esta solicitud escribiéndonos a la dirección de nuestra oficina legal.

**INFORMACIÓN ADICIONAL PARA RESIDENTES DE CALIFORNIA:**
La ley estatal de California Rosenthal y la ley de Cobranza Imparcial de Deudas (FDCPA) requieren que, salvo circunstancias excepcionales, cobradores no pueden hacer contacto con usted antes de las 8 de la mañana y después de las 9 de la noche. Ellos no pueden molestarle usando amenazas de violencia o de arresto o usando palabras obscenas. Los cobradores no pueden usar información falsa o engañosa o contactarle en su trabajo si ellos saben o tienen razón de saber que Ud. no puede recibir llamadas personales en el trabajo. Generalmente, los cobradores no pueden hablar con nadien, aparte de su abogado o su esposo/esposa, sobre su deuda. Los cobradores pueden hablar con otra persona para confirmar su dirección o hacer cumplir una sentencia. Para mas información sobre las actividades de cobranza, Ud. puede llamar gratis al 1-877-FTC-HELP (1-877-382-4357); o puede visitar www.ftc.gov.

**INFORMACIÓN ADICIONAL PARA RESIDENTES DE COLORADO:**
PARA INFORMACIÓN SOBRE LA LEY DE PRÁCTICAS JUSTAS PARA COBROS DE DEUDAS, VISITE WWW.COLORADOATTORNEYGENERAL.GOV/CA.

Un consumidor tiene derecho a solicitar por escrito que un cobrador de deudas o una agencia de cobranzas cesen de comunicarse con el consumidor. Una solicitud escrita de cese de comunicaciones no le prohibirá al cobrador de deudas o a la agencia de cobranzas tomar cualquier acción autorizada por la ley para cobrar la deuda.

**INFORMACIÓN ADICIONAL PARA RESIDENTES DE MINNESOTA:**
Esta agencia para el cobro de deudas cuenta con licencia del Departamento de Comercio de Minnesota.

**INFORMACIÓN ADICIONAL PARA RESIDENTES DE TENNESSEE:**
Esta agencia para el cobro de deudas cuenta con licencia de la Junta de servicios para el cobro de deudas del Departamento Estatal de Comercio y Seguros, 500 James Robertson Parkway, Nashville, Tennessee 37243.

\*Lo siguiente aplica a cualquier destinatario de esta carta que tenga derecho a recibir las protecciones garantizadas por el Código de Quiebras de los Estados Unidos. Esta carta es únicamente para propósitos de información y verificación. Esta carta no es una exigencia de pago ni un intento para cobrar, evaluar o recuperar una reclamación contra usted que surja antes del comienzo de su caso. En el caso de haber presentado una solicitud de protección por Bancarrota, por favor notifíquenos por escrito, indique su número de caso e identifique la Corte en la cual su caso esté pendiente.

# EXHIBIT 3

# Linebarger Goggan Blair & Sampson, LLP

ATTORNEYS AT LAW
THE CLEVELAND OFFICE BUILDING
1515 CLEVELAND PLACE, SUITE 300
DENVER, CO 80202
1(866) 280-4153 1(800) 677-1934 Fax

APRIL 18, 2013

43159678

FERRY CLAIMS LLC
91 25TH AVE
SAN FRANCISCO CA 94121-1104

Debtor: FERRY CLAIMS LLC
Account No:   2332208
Amount Due to City & County of San
Francisco BDR:
$90.00 as of APRIL 18, 2013

## *SECOND NOTICE*

Dear FERRY CLAIMS LLC:

Our law firm previously sent to you a letter regarding your debt with the City & County of San Francisco Bureau of Delinquent Revenue. You have failed to respond to our correspondence and we are assuming that this debt is valid.

The City & County of San Francisco Bureau of Delinquent Revenue is entitled to payment in full. Please forward the balance due, as shown above, along with the enclosed identification coupon. Our return envelope is enclosed for your convenience. Payments by mail must be in the form of a money order or personal check made payable to Linebarger Goggan Blair & Sampson, LLP. To pay by credit card, please call 1(866) 280-4153 or log on to http://www.lgbswebpayments.com and use **Client Code CACCSFRF1** and **Online Payment Number 43159678**.

This firm is a debt collector. We are attempting to collect a debt and any information obtained will be used for that purpose. At this time, no attorney with this firm has personally reviewed the particular circumstances of your account.

Very truly yours,

Linebarger Goggan Blair & Sampson, LLP



**NOTICE: SEE REVERSE SIDE FOR ADDITIONAL INFORMATION.**

We are required under various State laws to notify consumers of the following rights. This list does not include a complete listing of rights consumers may have under State and Federal Law.
**\*This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.**


## ADDITIONAL INFORMATION FOR MASSACHUSETTS RESIDENTS: NOTICE OF IMPORTANT RIGHTS

You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to us at our law firm address.

## ADDITIONAL INFORMATION FOR CALIFORNIA RESIDENTS:

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

## ADDITIONAL INFORMATION FOR COLORADO RESIDENTS:

FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA.

A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any action authorized by law to collect the debt.

## ADDITIONAL INFORMATION FOR MINNESOTA RESIDENTS:

This collection agency is licensed by the Minnesota Department of Commerce.

## ADDITIONAL INFORMATION FOR TENNESSEE RESIDENTS:

This collection agency is licensed by the Collection Service Board State Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, Tennessee 37243.


\*The following applies to any recipient of this letter who is entitled to the protections afforded by the United States Bankruptcy Code. This letter is for informational and verification purposes only. This letter is not a demand for payment nor an attempt to collect, assess or recover a claim against you that arose before the commencement of your case. In the event you have filed for bankruptcy protection, please notify us in writing and provide to us your case number and identify the Court in which your case is pending.

1    WILLIAM McGRANE [057761]
2    McGRANE LLP
     Four Embarcadero Center, Suite 1400
3    San Francisco, California 94111
     Telephone: (415) 292-4807
4    william.mcgrane@mcgranellp.com

5    MATTHEW J. SHIER [072638]
     LINDA SORENSEN [072753]
6    shierkatz RLLP
     930 Montgomery Street
7    6th Floor
     San Francisco, CA 94133
8    Telephone: (415) 691-7027
     mshier@shierkatz.com
9
     JONATHAN BASS [075779]
10   MARK L. HEJINIAN [281417]
     COBLENTZ PATCH DUFFY & BASS LLP
11   One Ferry Building, Suite 200
     San Francisco, CA 94111
12   Telephone: (415) 772-5726
13   jbass@cpdb.com

14   Attorneys for Plaintiff 4EC Holdings, LLC, a Delaware limited liability company, on behalf of
     itself and all others similarly situated
15
                    SUPERIOR COURT OF CALIFORNIA
16
             IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO
17

ELECTRONICALLY
F I L E D
Superior Court of California,
County of San Francisco

APR 24 2014
Clerk of the Court
BY: WILLIAM TRUPEK
              Deputy Clerk

| | |
|---|---|
| 18  4EC HOLDINGS, LLC, a Delaware limited liability company, individually and on behalf of a class of similarly situation persons and entities, | Case No: CGC-13-531744 |
| 19 | **PROOF OF SERVICE** |
| 20              Plaintiff, | |
| 21  vs. | |
| 22  LINEBARGER GOGGAN BLAIR & SAMPSON LLP, a Texas limited liability partnership, | |
| 23              Defendant. | |
| 24 | |

1    I, the undersigned, do hereby declare:

2    I am employed in the County of San Francisco, California.  I am over the age of eighteen
years and not a party to the within action. My business address is McGrane LLP, Four
3    Embarcadero Center, Suite 1400, San Francisco, CA 94111.

4    On this date, as indicated by the asterisk markings below, I served the following documents

5    **SECOND AMENDED COMPLAINT FOR VIOLATION OF THE UNFAIR
COMPETITION LAW; INJUNCTION TO PREVENT FUTURE ACTS OF
6    UNFAIR COMPETITION**

7    on the interested parties in said cause, as designated below:

8    *    (By Electronic Mail) by causing the documents to be sent to the persons at the e-mail
addresses listed below.  I did not receive, within a reasonable time after the transmission,
9    any electronic message or other indication that the transmission was unsuccessful.

10   **   (By Overnight Delivery) by placing the documents in an envelope or package provided by
an overnight delivery carrier and addressed to the persons at the addresses listed in below. I
11   placed the envelope or package for collection and overnight delivery at an office or a
regularly utilized drop box of the overnight delivery carrier.
12

13   Michael A. Sweet                          Michael L. Charlson
Ori Edelstein                             Jessica S. Mussallem
14   FOX ROTHSCHILD LLP                        Demi Williams
235 Pine Street, Suite 1500               Elliott J. Joh
15   San Francisco, CA 94104-2734             VINSON & ELKINS LLP
msweet@foxrothschild.com                  525 Market Street, Suite 2750
16   oedelstein@foxrothschild.com             San Francisco, CA 94105
**                                        mcharlson@velaw.com
17                                             jmussallem@velaw.com
dwilliams@velaw.com
18                                             ejoh@velaw.com
*
19

20   I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct, and that this declaration was executed on April 24, 2014 at San
21   Francisco, California.

22                                             _Aidan McCarthy_
Aidan McCarthy
23

24

# EXHIBIT B

1   Michael L. Charlson (SBN 122125)
        mcharlson@velaw.com
2   Jessica Mussallem (SBN 237806)
        jmussallem@velaw.com
3   Demi Williams (SBN 294423)
        dwilliams@velaw.com
4   Elliott J. Joh (SBN 264927)
        ejoh@velaw.com
5   **VINSON & ELKINS LLP**
    525 Market Street, Suite 2750
6   San Francisco, CA  94105
    Telephone: 415.979.6910
7   Facsimile: 415.704.3264

8   Attorneys for Defendant
    LINEBARGER GOGGAN BLAIR & SAMPSON LLP,
9   a Texas limited liability partnership

10                  **UNITED STATES DISTRICT COURT**

11                **NORTHERN DISTRICT OF CALIFORNIA**

12                         **SAN FRANCISCO**

13   4EC HOLDINGS, LLC, a Delaware limited liability
     company,                                              Case No.
14
                           Plaintiff,              **DECLARATION OF LORI GRUVER**
15
16          vs.

17   LINEBARGER GOGGAN BLAIR & SAMPSON
     LLP, a Texas limited liability partnership,
18
                           Defendant.
19

20   I, Lori Gruver, declare as follows:

21          1.      I am a partner and Chief Compliance Officer with the firm of Linebarger Goggan

22   Blair & Sampson, LLP ("Linebarger"), defendant in this action.  I make this Declaration in Support

23   of Linebarger's Notice of Removal.  I have personal knowledge of the matters and facts stated in this

24   Declaration, and if called upon to do so, I could and would competently testify to them.

25          2.      Linebarger is a limited liability partnership organized under the laws of Texas, and it

26   has its principal place of business in Austin, Texas.  Linebarger is in the business of assisting clients,

27   primarily state and local governmental entities, with collecting obligations owed to them.

28   Depending on the client, these obligations include a wide range of monies owed to the government,

                                            -1-

1  from unpaid taxes, fines, fees and tolls to bills for government services such as treatment at public

2  hospitals.

3      3.      As a partner in the firm's Risk Management Department, I have responsibility for

4  coordinating litigation matters involving Linebarger.   I have reviewed the Second Amended

5  Complaint ("SAC") attached by Plaintiff 4EC Holdings, LLC ("4EC") to their motion for leave to

6  amend and subsequently filed on April 23, 2014.  Specifically, I have reviewed 4EC's allegation that

7  Linebarger has improperly collected "millions of dollars," SAC ¶ 40, affecting a class with "tens of

8  thousands of members." *Id.* ¶ 30.  The Second Amended Complaint goes on to allege that 4EC is

9  seeking recovery of "all monies" that the firm "obtained from the Class during the Overall Relevant

10  Period" through its alleged conduct.  *Id.* ¶ C.  The "Overall Relevant Period," according to 4EC's

11  Second Amended Complaint, goes as far back as February 2002, an extension of more than seven

12  years from the First Amended Complaint.  *Id.* ¶ 8.

13      4.      Linebarger denies liability in this matter, and it disputes the material allegations of the

14  SAC including any claims for damages.

15      5.      Nonetheless, I have reviewed and analyzed Linebarger's collections made on behalf

16  of Linebarger's California government clients since February 2002, in light of the allegations in the

17  SAC.  My review reflects that, from February 2002 to September 2013, over 70,000 debtors who

18  were referred to Linebarger by its California government clients paid money following the mailing

19  of a collection letter from Linebarger.   The total amount obtained during this period from these

20  debtors was in excess of $10 million.

21      6.      In light of 4EC's demand for "all monies which [Linebarger] has obtained from the

22  Class," I directed the Information Technology Group at Linebarger to extract data from our CUBS

23  database reflecting the total number of debtors who made payments, the total amount collected, and

24  the total Linebarger fees for our California government clients for February 2002 until September

25  2013.   The client data extracted included more than 18 different state and local California

26  government agencies, departments, boards, and/or hospitals that are segregated in the database.  This

27  was a significant undertaking that took days and many hours of processing time to compile the

28  information.  I examined the data extraction and added the totals for each California government

-2-

DECLARATION OF LORI GRUVER                                    USDC N.D. CA CASE NO. _____

1  client for each year during the period and then totaled the whole period.  The sum total number of

2  debtors who made payments following the mailing of a collection letter was in excess of 70,000.

3  The sum total of the amounts paid by those debtors who had been mailed a collection letter was in

4  excess of $10 million.  If you exclude the beginning and ending months of the calculation (in which

5  Plaintiff alleged a specific beginning and ending date) and look at the period from March 2002 to

6  August 2013, the amount collected is still well in excess of $10 million.

7

8       I declare under penalty of perjury that the foregoing is true and correct and based upon my

9  personal knowledge.

10       Executed this 24th day of April, 2014, in Austin, Texas.

11

12                                                    Lori Gruver

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF LORI GRUVER                              USDC N.D. CA CASE NO. _____