WILLIAM McGRANE [057761]
McGRANE LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 292-4807
william.mcgrane@mcgranellp.com

MATTHEW J. SHIER [072638]
LINDA SORENSEN [072753]
shierkatz RLLP
930 Montgomery Street, 6th Floor
San Francisco, CA 94133
Telephone: (415) 691-7027
mshier@shierkatz.com

JONATHAN BASS [075779]
MARK L. HEJINIAN [281417]
COBLENTZ PATCH DUFFY & BASS LLP
One Ferry Building, Suite 200
San Francisco, CA 94111
Telephone: (415) 772-5726
jbass@cpdb.com

Attorneys for Plaintiff 4EC Holdings, LLC, a Delaware limited liability company, on behalf of itself and all others similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 4EC HOLDINGS, LLC, a Delaware limited liability company, individually and on behalf of a class of similarly situated persons and entities,<br><br>Plaintiff,<br><br>vs.<br><br>LINEBARGER GOGGAN BLAIR & SAMPSON LLP, a Texas limited liability partnership,<br><br>Defendant. | Case No: 3:14-CV-01944-VC<br><br>**PLAINTIFF 4EC HOLDINGS, LLC's MOTION TO REMAND**<br><br>Date:  June 12, 2014<br>Time:  1:30 p.m.<br>Judge: Hon. Vince Chhabria<br>Place: Courtroom 4 – 17th Floor<br>         450 Golden Gate Avenue<br>         San Francisco, CA 94102 |

**TABLE OF CONTENTS**

NOTICE ........................................................................................................................................3

RELIEF REQUESTED ................................................................................................................3

POINTS AND AUTHORITIES ...................................................................................................3

ISSUES TO BE DECIDED .........................................................................................................3

QUICK REVIEW .........................................................................................................................3

FACTUAL BACKGROUND .......................................................................................................4

ARGUMENT ................................................................................................................................5

I.  THE TEXAS LAW FIRM HAS THE BURDEN OF PROVING THAT ITS REMOVAL WAS VALID. .................................................................................................5

II. THE REMOVAL OF THIS ACTION TO THE FEDERAL COURT WAS NOT TIMELY.6

III. THE TEXAS LAW FIRM SHOULD BE JUDICIALLY ESTOPPED FROM CLAIMING THAT THE DOCUMENTS PRODUCED DID NOT TRIGGER THE 30-DAY REMOVAL PERIOD. ....................................................................................12

IV. THE TEXAS LAW FIRM SHOULD BE SANCTIONED FOR IMPROPER REMOVAL. ...........................................................................................................................................13

CONCLUSION ...........................................................................................................................14

## TABLE OF AUTHORITIES

### Cases

Ah Quin v. County of Kauai DOT, 733 F.3d 267, 270 (9th Cir.2013) ............................................. 12

Amarant v. Home Depot U.S.A., Inc., 2013 U.S. Dist. LEXIS 87990, 13-14 (E.D. Cal. 2013) ........ 7

Carvalho v. Equifax Information Servs., LLC, 629 F.3d 876, 885 (9th Cir. 2010) ........................... 7

Cohn v. Petsmart, Inc., 281 F.3d 837 (9th Cir. 2002) ........................................................................ 9

DeJohn v. AT&T Corp., 2011 U.S. Dist. LEXIS 1661, 6-7 (C.D. Cal. 2011) .................................... 7

Hampshire v. Maine, 532 U.S. 742, 750, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) ..................... 12

Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) .................................................. 5

Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 320 (2011) .......................................................... 4

Marquina v. Ferguson Enters., 2013 U.S. Dist. LEXIS 171867, 7-8 (C.D. Cal. Dec. 5, 2013) ......... 7

Pachinger v. MGM Grand Hotel-Las Vegas, Inc., 802 F.2d 362, 364 (9th Cir. 1986) ...................... 6

Roth v. CHA Hollywood Med. Ctr., L.P., 720 F.3d 1121, 1125 (9th Cir. 2013) ................. 11, 12, 13

St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938) ............................... 6

### Statutes

28 U.S.C. § 1332 ......................................................................................................................... 6, 10

28 U.S.C. § 1446 ........................................................................................................................... 6, 7

28 U.S.C. § 1447 ............................................................................................................................. 13

Cal. Bus. & Prof. C. § 17204 ............................................................................................................. 4

Cal. Bus. & Prof. C. § 6126 ............................................................................................................... 4

Cal. Bus.& Prof. C. § 17200 .............................................................................................................. 4

Fed. R. Civ. P. § 12(b)(6) ................................................................................................................... 4

### Other Authorities

16-107 Moore's Federal Practice - Civil § 107.30 (Matthew Bender & Co. 2014) ........................... 9

Plaintiff 4EC Holdings, LLC's Motion to Remand

**NOTICE**

PLEASE TAKE NOTICE that on June 12, 2014, at 1:30 p.m. in Courtroom 4 of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Plaintiff 4EC Holdings, LLC will present the following motion.

**RELIEF REQUESTED**

Plaintiff 4EC Holdings, LLC requests that the Court enter an order remanding this action to the San Francisco Superior Court whence it was removed.

**POINTS AND AUTHORITIES**

**ISSUES TO BE DECIDED**

Was removal on April 28, 2014 timely under the Class Action Fairness Act?

Should this case be remanded to the San Francisco Superior Court whence it was removed?

**QUICK REVIEW**

Defendant Linebarger Goggan Blair & Sampson LLP (the Texas Law Firm) is a Texas law firm that registered to do business in California under false pretenses, entered into contracts with various California government agencies (California Governments) under false pretenses and then sent hundreds of thousands of Californians (California Citizens) debt collection "dunning" letters that falsely represented the Texas Law Firm as "Attorneys at Law," when, in fact, the Texas Law Firm had no one on its roster who was a member of the State Bar of California. It used the "Attorneys at Law" moniker precisely because that would scare the California Citizens into paying (thus, "Texas Lawyer Scare Letters"). The "Attorneys at Law" misrepresentation fooled Plaintiff 4EC Holdings, LLC (4EC) into making a payment to the City and County of San Francisco. The Texas Law Firm collected tens of millions of dollars from tens of thousands of California Citizens. Only a part of that money went into the coffers of the California Governments; the rest went to the Texas Law Firm.

1  What the Texas Law Firm did was unfair, unlawful and fraudulent under Section 17200 of
2  the California Business & Professions Code (UCL).  Holding oneself out as a lawyer, when not in
3  fact a member of the State Bar of California, is the unlawful practice of law and is punishable as a
4  misdemeanor.  Cal. Bus. & Prof. C. § 6126.  This case is a class action by the California Citizens
5  subjected to the Texas Law Firm's scheme.  On April 28, 2014—after more than a year in the state
6  courts (and on the eve of several contempt hearings) the case was removed to the Federal Court
7  under the Class Action Fairness Act and, just yesterday, a Fed. R. Civ. P. § 12(b)(6) motion
8  (largely recycling arguments previously rejected in the state court in connection with the Texas
9  Law Firm's prior, overruled demurrer to the First Amended Complaint) was filed.   Removal came
10 too late and the case must, accordingly, be remanded with the state court charged with
11 responsibility for determining whether the Second Amended Complaint filed April 24, 2014 states
12 a proper claim for relief under state, not federal, procedural rules.

13                              **FACTUAL BACKGROUND**

14     This action was filed on May 28, 2013.  In the Second Amended Complaint (SAC) 4EC
15 alleges that the Texas Law Firm violated the UCL by willfully misrepresenting itself as "Attorneys
16 at Law" to the California Citizens to whom it sent Texas Lawyer Scare Letters in an effort to
17 collect delinquent fees and taxes purportedly on behalf of several California Governments.
18 California Citizens who responded to such letters sent their money directly to the Texas Law Firm,
19 not the California Government.  McGrane Decl., ¶ 5, Exh. C at ¶¶ 9-34.
20     The UCL confers broad powers on the Court to deal with unfair, unlawful and fraudulent
21 business practices, including the power to order restitution and the power to enjoin such
22 misconduct.  UCL at § 17204; Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 320 (2011).
23     Thus, the amount of restitution that 4EC claims should be ordered is the full amount that
24 the Texas Law Firm collected from individuals, not just the amount on money that was kept by the

1  Texas Law Firm. In soliciting work from the California Governments, the Texas Law Firm also
2  misrepresented its status to them. The contracts under which the Texas Law Firm was operating
3  were therefore void (and have not since been ratified). They were not entitled to ask for or receive
4  *any* money from *any* California Citizen, regardless of what the Texas Law Firm might eventually
5  have done with the money.[1]

6      As the Court can tell from the volume of materials included in the Notice of Removal, the
7  Texas Law Firm actively participated in the State Court action. It filed a demurer to the complaint;
8  it moved to have the case designated as "complex," it propounded discovery to 4EC, etc. 4EC
9  propounded discovery to the Texas Law Firm and was required to file a motion to compel when the
10 Texas Law Firm refused to disclose the names of the people it sent the Texas Lawyer Scare Letters
11 to and the amounts that were paid. The San Francisco Superior Court ordered the Texas Law Firm
12 to make this disclosure, but the Texas Law Firm abjectly refused to comply with the order.
13 McGrane Decl. ¶ 6, 7, Exhs. D, E.

14     The Notice of Removal was filed three days before the San Francisco Superior Court was to
15 hear two related motions to hold the Texas Law Firm and its counsel in contempt for refusing to
16 comply with its orders. McGrane Decl. ¶ 8.

17                         **ARGUMENT**

18 **I.   THE TEXAS LAW FIRM HAS THE BURDEN OF PROVING THAT ITS REMOVAL WAS VALID.**
19

20     "The strong presumption against removal jurisdiction means that the defendant always has
21 the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor

---

[1] To the extent that the Texas Law Firm remitted any part of what was collected to the California Governments, it did so as an officious intermeddler/volunteer, and not in any official capacity. 4EC is not asking that the California Governments disgorge any of the fees and taxes it received; only that the Texas Law Firm restore the citizens to their position before being deceived.

of remand to state court." Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) (internal quotation marks omitted).

## II. THE REMOVAL OF THIS ACTION TO THE FEDERAL COURT WAS NOT TIMELY.

### A. NOTICE OF REMOVAL MUST BE FILED WITHIN 30 DAYS OF DEFENDANT'S RECEIPT OF ANY "OTHER PAPER" ESTABLISHING THAT THE AMOUNT IN CONTROVERSY IS MORE THAN $5 MILLION.

An action filed in the State Court can only be removed to the Federal Court under 28 U.S.C. § 1446 if (i) the Federal Court would otherwise have had original jurisdiction and (ii) the notice of removal is timely filed.

The Federal Court would have had original jurisdiction over this case under 28 U.S.C. § 1332(a) or (d). Section 1332(d) was added to Section 1332 as part of the Class Action Fairness Act, 109 Pub. L. No. 2 (2005) (CAFA). Generally speaking, it provides for original jurisdiction over class actions where the amount in controversy is at least $5 Million[2] and the class is at least 100 members. 28 U.S.C. § 1332(d)(2), (5). Section 1332(a) provides for original jurisdiction where there is diversity between the parties and the amount in controversy—for class actions—also is $5 Million. See 28 U.S.C. § 1332(d)(5)(B),(6).

All of the elements for removal were patent from the original complaint except for the amount in controversy and the number of members of the class. That is, the initial complaint stated that it was a class action and the initial complaint stated that there was complete diversity among the participants. McGrane Decl. ¶ 3, Exh. A at ¶¶ 1, 3, 8.

---

[2] As explained above, the "amount in controversy" would be the full amount that the California Citizens paid to the Texas Law Firm, not just the amount the Texas Law Firm kept for itself. See St. Paul Mercury Indemnity Co. v Red Cab Co., 303 U.S. 283, 288-89 (1938) ("the sum claimed by the plaintiff controls if the claim is apparently made in good faith"); Pachinger v. MGM Grand Hotel-Las Vegas, Inc., 802 F.2d 362, 364 (9th Cir. 1986) (the sum claimed by the plaintiff controls unless it would be "virtually impossible" to meet the requirement).

Section 1446 establishes two 30-day time limits for removal. One runs from the initial pleading if the conditions for removal are evident on the face of the pleading; that is not at issue here. The other 30-day time limit, Section 1446(b)(3), runs from the point in time when the defendant receives pleadings or "other paper(s)" from which it may be ascertained that the case is removable:

> Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or **other paper** from which it may first be ascertained that the case is one which is or has become removable.

"Other paper" is, in turn, defined in Section 1446(c)(3) as follows:

> (A) If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a) [28 USCS § 1332(a)], **information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an "other paper" under subsection (b)(3).**

"Thus, as explained by the Ninth Circuit in Carvalho v. Equifax Information Servs., LLC, 629 F.3d 876, 885 (9th Cir. 2010), Section 1446(b) provides two 30-day periods for removing a case. Interrogatory responses and other discovery documents as well as deposition testimony can constitute an "other paper" under Section 1446(b), triggering the second 30-day period for removal. Id. at 886-87." Amarant v. Home Depot U.S.A., Inc., 2013 U.S. Dist. LEXIS 87990, 13-14 (E.D. Cal. 2013).

Documents produced in response to a request for documents qualify as "other papers" and trigger the 30-day limit. See Marquina v. Ferguson Enters., 2013 U.S. Dist. LEXIS 171867, 7-8 (C.D. Cal. Dec. 5, 2013); DeJohn v. AT&T Corp., 2011 U.S. Dist. LEXIS 1661, 6-7 (C.D. Cal. 2011).

1  B.  **THE TEXAS LAW FIRM RECEIVED DISCOVERY RESPONSES ON MARCH 18, 2014, THAT SHOWED THAT THE AMOUNT IN CONTROVERSY EXCEEDED $5 MILLION.**

At the outset of this case 4EC served several subpoenas duces tecum on various California Governments that 4EC thought had hired the Texas Law Firm. The California Governments responded by producing documents relating to the Texas Law Firm. On February 14, 2014, the Texas Law Firm propounded requests for production of documents to 4EC requesting, among other things, that 4EC produce copies of whatever documents 4EC received from the California Governments. 4EC responded by producing all such documents on March 18, 2014. Terry Decl., ¶ 5-7; McGrane Decl., ¶ 9, Exh. F.

The documents produced to the Texas Law Firm on March 18, 2014, revealed that the amount in controversy exceeded $ 5 Million. Take one example—document P1272-73 from the Franchise Tax Board:

State of California Franchise Tax Board
chair John Chiang
member Jerome E. Horton
member Ana J. Matosantos

**Monthly Revenue Update**
**Linebarger Goggan Blair & Sampson**
*Total Commissionable Collections From Approved Monthly Invoices For Contract Number C0700050

| Fiscal Year | Contract Year | Quarterly Performance Evaluation | Billing Period | Collections | Commissions |
|---|---|---|---|---|---|
| FY 2008/2009 Assigned: $170,488,400 Collections: $758,088.89 Commissions: $136,455.97 Recovery: 0.44% | Contract Year 1 Assigned: $96,864,953 Collections: $479,080 Recovery: 0.48% | 1 | Aug 2008 | $ 8,264.48 | $ 1,487.60 |
| | | | Sep 2008 | $ 39,502.86 | $ 7,110.51 |
| | | | Oct 2008 | $ 50,530.07 | $ 9,095.47 |
| | | 2 | Nov 2008 | $ 71,424.76 | $ 12,856.46 |
| | | | Dec 2008 | $ 72,361.14 | $ 13,025.03 |
| | | | Jan 2009 | $ 95,229.27 | $ 17,141.28 |
| | | 3 | Feb 2009 | $ 57,766.07 | $ 10,397.85 |
| | | | Mar 2009 | $ 84,001.23 | $ 15,120.25 |
| | | | Apr 2009 | $ 86,443.02 | $ 15,559.68 |
| | Contract Year 2 Assigned: $243,729,378 Collections: $1,498,754 Recovery: 0.61% | 4 | May 2009 | $ 101,427.29 | $ 18,256.93 |
| | | | Jun 2009 | $ 91,138.70 | $ 16,404.91 |
| | | | Jul 2009 | $ 106,567.95 | $ 19,182.22 |
| FY 2009/2010 Assigned: $422,279,373 Collections: $1,693,005.34 Commissions: $304,741.03 Recovery: 0.41% | | 5 | Aug 2009 | $ 104,052.71 | $ 18,729.52 |
| | | | Sep 2009 | $ 144,130.90 | $ 25,943.58 |
| | | | Oct 2009 | $ 177,206.48 | $ 31,897.18 |
| | | 6 | Nov 2009 | $ 130,637.93 | $ 23,514.83 |
| | | | Dec 2009 | $ 147,702.27 | $ 26,586.41 |
| | | | Jan 2010 | $ 179,127.98 | $ 32,243.01 |
| | | 7 | Feb 2010 | $ 122,953.65 | $ 22,131.67 |
| | | | Mar 2010 | $ 107,364.92 | $ 19,325.68 |
| | | | Apr 2010 | $ 134,713.40 | $ 24,248.41 |
| | Contract Year 3 Assigned: $469,553,451 Collections: $2,426,652 Recovery: 0.52% | 8 | May 2010 | $ 128,112.81 | $ 23,060.33 |
| | | | Jun 2010 | $ 210,434.34 | $ 37,878.19 |
| | | | Jul 2010 | $ 222,200.40 | $ 39,996.07 |
| FY 2010/2011 Assigned: $363,699,609 Collections: $2,453,279.78 Commissions: $441,590.44 Recovery: 0.67% | | 9 | Aug 2010 | $ 196,490.59 | $ 35,368.29 |
| | | | Sep 2010 | $ 263,442.33 | $ 47,419.63 |
| | | | Oct 2010 | $ 213,098.45 | $ 38,357.72 |
| | | 10 | Nov 2010 | $ 203,638.01 | $ 36,654.84 |
| | | | Dec 2010 | $ 301,337.88 | $ 54,240.86 |
| | | | Jan 2011 | $ 165,408.23 | $ 29,773.49 |
| | | 11 | Feb 2011 | $ 199,620.37 | $ 35,931.69 |
| | | | Mar 2011 | $ 188,154.93 | $ 33,867.90 |
| | Contract Year 4 | | Apr 2011 | $ 165,662.14 | $ 29,819.17 |
| | | 12 | May 2011 | $ 163,810.93 | $ 29,485.95 |
| | | | Jun 2011 | $ 170,415.52 | $ 30,674.83 |
| Contract Sub-Totals (FY 08-09/09-10/10-11): | | | | $ 4,904,374.01 | $ 882,787.44 |

| **Monthly Revenue Update** |
|---|

| Linebarger Goggan Blair & Sampson |
|---|

| *Total Commissionable Collections From Approved Monthly Invoices For Contract Number C0700050 |
|---|

| Fiscal Year | Contract Year | Quarterly Performance Evaluation | Billing Period | Collections | Commissions |
|---|---|---|---|---|---|
| FY 2011/2012 Assigned: $183,639,621 Collections: $1,770,196 Commissions: $318,636 Recovery: 0.96% | Contract Year 4 Assigned: $286,472,783 Collections: $2,090,753 Recovery: 0.73% | 12 | Jul 2011 | $195,560.28 | $35,200.88 |
| | | 13 | Aug 2011 | $200,696.43 | $36,125.37 |
| | | | Sep 2011 | $234,971.82 | $42,294.96 |
| | | | Oct 2011 | $176,986.34 | $31,857.58 |
| | | 14 Final QPE | Nov 2011 | $188,207.15 | $33,877.34 |
| | | | Dec 2011 | $142,527.99 | $25,655.06 |
| | | | Jan 2012 | $155,489.48 | $27,988.14 |
| | | | Feb 2012 | $118,176.95 | $21,271.91 |
| | | | Mar 2012 | $178,247.77 | $32,084.63 |
| | Residuals | | Apr 2012 | $66,120.28 | $11,901.69 |
| | | | May 2012 | $57,715.94 | $10,388.86 |
| | | | Jun 2012 | $55,495.19 | $9,989.13 |
| FY 2012/2013 Assigned: $0 Collections: $292,788 Commissions: $52,702 | Assigned: $0 Collections: $472,119 | | Jul 2012 | $46,643.04 | $8,395.73 |
| | | | Aug 2012 | $46,423.46 | $8,356.26 |
| | | | Sep 2012 | $33,216.45 | $5,978.99 |
| | | | Oct 2012 | $33,973.83 | $6,115.29 |
| | | | Nov 2012 | $43,801.28 | $7,884.23 |
| | | | Dec 2012 | $23,083.64 | $4,155.07 |
| | | | Jan 2013 | $26,317.73 | $4,737.19 |
| | | | Feb 2013 | $17,529.91 | $3,155.36 |
| | | | Mar 2013 | $21,798.50 | $3,923.73 |
| C0700050 Total Value Assigned: $1,140,107,003 | | |
| C0700050 Total Recovery Rate: 0.61% | | |
| **Contract Sub-Totals:** | | | | **$2,062,983.46** | **$371,337.40** |
| **Contract Totals:** | | | | **$6,967,357.47** | **$1,254,124.84** |

This one document alone shows that total collections for the FTB were $6,967,357.46. The FTB was only *one* of the California Governments the Texas Law Firm worked for, and the chart only covers collections up to March 2013. McGrane Decl., ¶ 10, Exh. G.[3]

That's not all—many other documents produced by the California Governments, and, in turn, produced to the Texas Law Firm on March 18, 2014, also show that the amounts in controversy exceeds $5 Million. Terry Decl., ¶ 10-17, Exhs. L-Q.

And if that were not enough, the next day, on March 19, 2014, 4EC's counsel sent the Texas Law Firm's counsel a proposed Second Amended Complaint with a request that he stipulate to an order granting leave to amend. The proposed Second Amended Complaint stated:

---

[3] The earliest entries on the chart preceded the original start date for the Class in the initial and first amended complaint. But even after those amounts are subtracted, the total is $6,209,286.58.

> To date, the Texas Law Firm has collected tens of millions of dollars from tens of thousands (if not hundreds of thousands) of California Citizens during the Relevant Period using illegal Texas Lawyer Scare Letters.

McGrane Decl., ¶ 11 Exh. H.

Informal communications between the parties are "other papers" sufficient to apprize a party of the amount in controversy. See, e.g., Cohn v. Petsmart, Inc., 281 F.3d 837 (9th Cir. 2002) (settlement demand supported amount in controversy for removal); 16-107 Moore's Federal Practice - Civil § 107.30 (Matthew Bender & Co. 2014) ("For example, correspondence between parties, such as a statement of damages letter identifying the damages and losses suffered by the plaintiff, constitutes "other paper" that may be considered in determining the amount in controversy for purposes of removal.")

C. **THE TEXAS LAW FIRM ALREADY ADMITTED KNOWING THAT THE NUMBER OF CLASS MEMBERS EXCEEDED 100, AND RECEIVED DISCOVERY RESPONSES ON MARCH 18, 2014, THAT SHOWED AS MUCH.**

It was not, strictly speaking, necessary for the Texas Law Firm to know that the class exceeded 100 members for this case to be removed from State to Federal Court. Jurisdiction could have been based on diversity alone under Section 1332(a). The Texas Law Firm is a Texas LLP with its principal place of business in Texas; 4EC is a Delaware LLC with its principle place of business in California, and the Class is defined to consist of citizens of California. McGrane Decl., ¶ 3, Exh. A (Complaint) at ¶¶ 1, 3, 8; ¶ 4, Exh. B (First Amended Complaint) at ¶¶ 1, 3, 19. There was complete diversity from the start. Section 1332(a) does not have a numerosity requirement. There is an amount in controversy requirement,[4] but, as explained above, that was known to the Texas Law Firm at the latest on March 18, 2014.

---

[4] For class actions, the amount in controversy under section 1332(a) is $5 Million aggregate. 28 U.S.C. § 1332(d)(6).

1   Nevertheless, CAFA jurisdiction existed as well.

2   In its Memorandum of Points and Authorities in Support of Defendant's Cross-Motion for Protective Order, filed February 4, 2014, the Texas Law Firm admitted knowing that the size of the class was well over 100:

> The [protective] order is needed because Plaintiff's discovery requests as propounded implicate both proprietary trade secret and confidential business information of LGBS but perhaps more importantly the private financial, tax-related and even medical information of literally **thousands of Californians—people who would comprise the class that 4EC proposes to have certified and to represent.**

McGrane Decl., ¶ 12, Exh. I at pp. 1-2.

The March 18, 2014, document production included "other papers" that demonstrated that the class exceeds 100. For instance, a document produced by the Sonoma County TTC (P07275-7644) sets forth a "client inventory" list of more than debtors assigned to the Texas Law Firm for collection. More than 100 of the debtors paid the Texas Law Firm. McGrane Decl., ¶ 13, Exh. J. Again, this is only *one* set of names from *one* of the clients. And, as noted above, the proposed Second Amended Complaint alleged that there were tens of thousands of class members.

### D.   THE NOTICE OF REMOVAL WAS NOT TIMELY.

At the very latest, the Texas Law Firm had 30 days from March 18, 2014, to remove this case. Time ran out on April 17, 2014. The Notice of Removal was not filed until April 28, 2014—11 days too late.

In Roth v. CHA Hollywood Med. Ctr., L.P., 720 F.3d 1121, 1125 (9th Cir. 2013) (Roth) the Ninth Circuit cautioned against allowing a defendant to put his head in the sand:

> For good reason, § 1446(b)(1) and (b)(3) place strict limits on a defendant who is put on notice of removability by a plaintiff. A defendant should not be able to ignore pleadings or other documents from which removability may be ascertained and seek removal only when it becomes strategically advantageous for it to do so.

### III. THE TEXAS LAW FIRM SHOULD BE JUDICIALLY ESTOPPED FROM CLAIMING THAT THE DOCUMENTS PRODUCED DID NOT TRIGGER THE 30-DAY REMOVAL PERIOD.

We recognize that in the Ninth Circuit a defendant is not required to investigate the size of a claim for removal purposes. But this case presents a different situation. Not only did the Texas Law Firm *know* that the amount in controversy was greater than $5 Million, and that there were more than 100 class members, it sought affirmatively to use this information to its benefit.

After all, the Texas Law Firm purportedly represents various California Governments collecting their debts. It has to keep track of the amounts its collects and the numbers of people it collects from.[5] The documentation that was presented to the Texas Law Firm on March 18, 2014, came from the Texas Law Firm's own clients—information the Texas Law Firm already had.

As to the number of class members, as noted above, the Texas Law Firm represented to the Court that it believed that the Class consisted of "thousands of Californians".

As to the amount in controversy, in Defendant's Application to Have This Case Designated Complex, filed on July 16, **2013**, the Texas Law Firm explained how it came to work for the City and County of San Francisco in the first place:

> In March 2010 the Treasurer's Office for the City and County of San Francisco estimated that the City had 447,388 delinquent accounts. The average owing on these accounts was $964. The City Treasurer's office issued a Request for Proposal ("RFP") seeking assistance from an outside collection agency to recapture delinquent revenue owed to the City.

McGrane Decl., ¶ 14, Exh. K at p. 2.

That's **$431,282,032** in delinquent accounts that were turned over to Linebarger. Its collection rate would have to have been below 1.1% for this case to involve anything less than $5 Million. Even if the Texas Law Firm were that ineffective, this was only *one* client. The Texas

---

[5] As opposed to most cases where the damages are the plaintiff's province, here, where restitution is the issue, the amount in controversy has always been exclusively in the hands of the defendant.

Law Firm did not have to "investigate" anything; it cannot say with a straight face that it did not always know that the amount in controversy in this case was more than $5 Million.

"[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion. New Hampshire v. Maine, 532 U.S. 742, 750, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) (internal quotation marks omitted). "[I]ts purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Id. at 749-50 (citation and internal quotation marks omitted)." Ah Quin v. County of Kauai DOT, 733 F.3d 267, 270 (9th Cir.2013) (internal quotation marks omitted).

A defendant cannot claim the size of a case requires special treatment, then claim that documentation provided to it that confirmed the size of the case did not trigger what it already knew. In Roth, *supra* 720 F.3d at p. 1125, for instance, the Court pointed out that defendant CHA was able to determine from its own records whether one of the class members had left the state (which would establish the necessary diversity under CAFA). The Court noted that "It would be odd, even perverse, to prevent removal in this case…"[6] The Court should avoid a similar perverse result here.

### IV. THE TEXAS LAW FIRM SHOULD BE SANCTIONED FOR IMPROPER REMOVAL.

Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

The removal of this case came three days before the State Court was to hear two motions requesting that the Texas Law Firm and its counsel be held in contempt for refusing to comply with

---

[6] The issue in Roth was not remand, but removal. The Court held that that the two 30-day periods were not the exclusive time periods for removal, and that a defendant could remove when it discovered the basis. All we are suggesting is that if the Defendant already knows what it knows, and has used that information to try to gain an advantage, it should not be heard to complain that it did not read or comprehend documents / information that it already knew about.

an order compelling the Texas Law Firm to produce the names and addresses of the California Citizens who were sent Texas Lawyer Scare Letters.  McGrane Decl., ¶ 8.

The Ninth Circuit warned of just such a situation in <u>Roth</u>, *supra* 720 F.3d at p. 1126:  "It is thus at least theoretically possible in a CAFA case for a defendant to wait until the state court has shown itself ill-disposed to defendant, or until the eve of trial in state court, before filing a notice of removal."  The answer, according to the Court was for the plaintiff to provide a document from which removability could be ascertained.  We did exactly that.  Now we ask the Court to address the defendant's gamesmanship with the appropriate sanction.

## CONCLUSION

Running away from contempt charges by filing an obviously late Notice of Removal is an unfair burden on both federal and state justice systems, not to mention a class of California Citizens who have been demonstrably abused by an unlicensed law firm.  Remand should be granted and the defendant and its counsel sanctioned.

Dated:  May 6, 2014

MCGRANE LLP
shierkatz RLLP
COBLENTZ PATCH DUFFY & BASS LLP

By: _____
Jonathan Bass
Attorneys for 4EC and all others similarly situated